## MILLER PASTEURIZING MACH. CO. v. CONWAY.

(District Court, D. Pennsylvania. June 23, 1914.)

(No. 2114 June Sess. 1912.)

1. SALES (§ 455*)—CONDITIONAL SALE—CONSTRUCTION—BAILMENT.

Where a contract for the transfer of certain machinery stated the terms of sale, and then provided that the title to the machinery should remain in the seller until the purchase price had been fully paid, which title the seller might at any time assert at its option by declaring the sale off and retaking or reclaiming the machinery, the contract was one of sale and not of bailment, so that, if the seller exercised its right to retake the property, it was bound to do so before the rights of an innocent purchaser for value intervened.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1326; Dec. Dig. § 455.*]

2. REPLEVIN (§ 90*)—QUESTIONS OF LAW AND FACT—DETERMINATION.

Where, in replevin by a seller of machinery under a conditional contract of sale, plaintiff called defendant as a witness in his own behalf as a part of plaintiff's main case and proved by him that he was an innocent purchaser for value, before plaintiff had exercised its option to retake the machinery, there was no question for a jury, and the court

---

properly determined that plaintiff was not entitled to recover as a matter of law.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. §§ 352, 353; Dec. Dig. § 90.*]

At Law. Action by the Miller Pasteurizing Machine Company against Thomas Conway, Jr. On motion for a new trial. Denied.

R. H. Locke, of Philadelphia, Pa., for plaintiff.

H. Edgar Barnes, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This case is one of replevin. The trial was had before the late Judge Holland and a jury. There was a verdict for defendant under binding instructions from the trial judge. A motion was made for a new trial which was pending at the time of the decease of Judge Holland. .

The facts upon which the plaintiff based its claim of title to the disputed property may be sufficiently outlined in a short statement. The property, the title to which is in dispute, belonged to the plaintiff company, and was sold by it to an ice cream manufacturer, known as the Bahls Ice Cream & Bakery Company, and the property was delivered to the purchaser at its place of business No. 2009 North street. The sale was evidenced by a paper writing dated April 11, 1911, which stated the terms of sale and provided that the title should remain in the vendor until the purchase price had been fully paid. The property purchased consisted of machines and appliances for the manufacture of ice cream, and was set up and installed by the purchaser as part of its manufacturing plant. The purchaser occupied leased premises, and agreed that these fixtures should become part of the realty and be left upon the premises and belong to the landlord. The landlord retook possession of the leased premises and of these machines, etc., and sold the real estate, including these machines, to the defendant, Thomas Conway, Jr.

Next in the chronological order of events, the company which had bought the machines of the plaintiff was adjudicated a bankrupt. In the course of the bankruptcy proceedings two events transpired which, while they have no direct bearing upon the question now before us, are perhaps necessary, or at least helpful, to a full understanding of . the evidence offered at the trial.

Following the agreement of purchase, the purchaser delivered to the vendor, the plaintiff in this case, certain old machines, at an agreed valuation of $450, and paid to the plaintiff the further sum of $700 in cash, for which a credit of $1,150 on the purchase price was allowed, and gave to the plaintiff its promissory note for $2,035 for the balance of the sale price. This note was renewed at least once, and either the original or the renewal note was discounted for the plaintiff by some bank. In the course of the bankruptcy proceedings the plaintiff presented a claim against the bankrupt estate, basing its claim upon the amount of the unpaid purchase money for the replevied property represented by the note referred to. It is not entirely clear whether the claim was made by the plaintiff as the holder of this note or was

made by the bank which had discounted it. It would appear that the claim had been made by the plaintiff because there seems to have been a form of claim filed in which the claim was set forth to be an unsecured claim for which the plaintiff held no security as collateral or otherwise.

The other event was that Thomas Conway, Jr., the defendant, applied for what was in effect an order on the receiver or trustee in bankruptcy to turn the replevied machines and appliances, which are the subject of this replevin suit, over to him as his property acquired by him through his purchase from the landlord and as not being part of the assets of the bankrupt estate. This order was eventually made and the property was turned over to him. In this connection, it might be further stated that following this proof of claim the name of the plaintiff appeared upon the dividend sheets in the bankruptcy proceedings as a creditor entitled to a 4 per cent. dividend, amounting to something more than $80, and a check for this amount was made out and sent to the plaintiff by the trustee in payment of this dividend. This check was attempted to be returned by the plaintiff to the trustee by being sent back to him, and was in turn resent by the trustee to the plaintiff; the trustee refusing to accept of the return of it. The plaintiff subsequently brought its action in replevin, giving the usual replevin bond, and the machines and appliances referred to were delivered to it by the marshal.

The case was then put at issue upon the question of whether or not plaintiff had such right of possession to the property replevied as entitled it to recover.

The case as now presented comes before the court as if it were a case upon an appeal, and the questions presented are appellate questions.

The view which otherwise might be had of the questions, both of fact and law, involved in the trial of the case, and the appellate questions which arise out of this record, are somewhat obscured by the course of the trial and by the manner in which the plaintiff's side of the issue was presented. Instead of confining itself to its prima facie case of showing title in itself to the property replevied and of its possession by the defendant when the writ issued, the plaintiff essayed to answer an anticipated defense. Had the plaintiff confined itself to testimony and evidence, which would have supported a prima facie title in itself, the real points in the case would have been sharply defined and clearly raised.

The proofs in support of this title would have been confined to proof of plaintiff's original ownership of the machines, of the contract of bailment, and of the exercise of its right to reclaim possession of the bailed property. Had the defendant offered no evidence, the case of the plaintiff would have turned (assuming the contract of bailment) upon the sole question of whether the mere issuance of the writ of replevin was a sufficient exercise of its right to reclaim possession of the property, or whether it was necessary for the plaintiff to have made demand or given other notice of its claim of ownership.

If the trial judge had held the plaintiff to have made out a prima

facie case, the defendant would have been put to his defense. This defense might have consisted of evidence of the following facts:

(1) In denial of the exercise of the right of the plaintiff to reclaim possession of the property that the plaintiff had elected to treat its bailee as its debtor for the purchase price by filing a claim against its bankrupt estate, thereby affirming the title of its vendee.

(2) The agreement of the bailee by which it sold the replevied property to its landlord, and he, in turn, to the defendant, against whom as an innocent purchaser for value the plaintiff could not assert title in replevin.

To the first proposition of the defense the plaintiff would have replied that it had been misled into filing its proofs of claim by false representations, and that it had withdrawn its claim and had returned to its original position as an owner of the property.

The plaintiff would have met the second proposition with a denial that either the landlord or the defendant was an innocent purchaser for value. This would have left in the case: First, the proposition of law whether the agreement of April 11, 1911, was a mere sale and purchase of the machines or was one of bailment, with such title reserved by the bailor as to enable it to assert it against the bailee. If this proposition was ruled in its favor, then the case would have turned upon the two propositions of fact, whether the plaintiff had lost or exercised its optional right, and, if this were found in its favor, whether the defendant or his vendor was an innocent bona fide purchaser for value. It would have clearly been the right of the plaintiff to have had these questions of fact passed upon by a jury, unless it failed to offer sufficient evidence upon the first to support a verdict in its favor, and unless the burden was not upon the defendant to show that he was either mediately or immediately a purchaser for value.

Instead of following by its pleadings and evidence the course outlined, the plaintiff essayed the task of anticipating and meeting all of these defenses in its statement of claim and by its proofs. Restating these proofs in their logical order, and passing by the question of the title to the replevied property having originally been in the plaintiff as an admitted fact in the case, there was testimony and evidence to the following effect:

(1) The agreement of sale or bailment, whichever it is properly construed to be, was regularly in evidence.

(2) No written lease between the vendee or bailee and its landlord, if there was one, was offered, and there was no direct evidence of its existence. There was testimony, however, to the effect that the lessee had agreed that these machines should remain on the premises in consideration of the alterations made in the buildings and should become the property of the landlord. There was also testimony to the effect that the replevied property consisted of what otherwise would be trade fixtures.

(3) It does not very clearly appear from the evidence whether the claim of title of the defendant to these machines is based upon anything more than his purchase of the real estate from the landlord, and the conveyance was not put in evidence. The plaintiff, however, called

the defendant as a witness, and he swore positively to the purchase of the machines, and that he gave value for them and bought them without notice of any claim of title of the plaintiff, and there was no other testimony or evidence upon that branch of the case.

(4) There was testimony and evidence to the effect that the bailee or vendee of the plaintiff had paid $1,150 on account of the purchase price and had given its note for the balance, which note had been discounted for the plaintiff by some bank and remains unpaid, and that the maker of the note had been adjudicated a bankrupt, and a claim was filed against the bankrupt estate on this note as an unsecured claim.

(5) There was also some testimony given and evidence admitted that the plaintiff had been misled into making the agreement of April 11, 1911, by false representations of the credit standing of its vendee or bailee, and into presenting its claim against the bankrupt estate by having held out to it expectations that the bankrupt company would be reorganized and prove solvent. There was no evidence, however, that the plaintiff had exercised its option of reclaiming title to and possession of the replevied property other than by the issuance of the writ and the subsequent proceedings in the replevin case.

The general question now presented is whether the trial judge was justified in directing a verdict for the defendant. He was so justified if any of the following propositions are sound:

(1) That the agreement of April 11, 1911, was a transaction of sale and purchase and passed title to the vendee against the plaintiff.

(2) That the only right of the plaintiff under the paper of April 11, 1911, was its option to reclaim the property, and that it had offered no evidence to justify a finding that it had exercised this option.

(3) That the option thus given to the plaintiff could not be exercised as against an innocent purchaser for value, and that the evidence before the jury required them to find this fact in favor of the defendant.

A discussion of the proper construction and legal meaning of the paper of April 11, 1911, is called for in passing upon the soundness of the propositions stated. Usually papers of the general character of this one are so drawn that they are in form strictly and only contracts of bailment, whatever they may be in fact. There is no purchase price stipulated, and all payments made, or to be made, are expressly stated and declared to be made as compensation for the use of the property and not in consideration of its purchase. In form the papers are contracts of bailment and not of sale. There is never any difficulty in construing them in the sense of determining the meaning of the words contained in them. The real difficulty is over the hesitation of the courts to permit juries to find that to be a lie which the parties have expressly declared to be a fact. The letter of the contract is plain enough. It is because the courts see that the contract is one in which "the letter killeth" the real justice of the cause that they are tempted to exercise their ingenuity in making the "letter" by construction conform to what was really the transaction between the parties. No such difficulty is presented by this paper.

[1] It is by its terms a contract of sale and purchase. This con-

tract of sale was duly followed by delivery and by payment of quite a substantial part of the purchase price. There is in the contract only the added thought that the vendor, in order to have the payment of the balance of the purchase money secured and be in a position to enforce its payment, shall retain the title to the property sold, which title it may at any time assert "at its option" by declaring the sale off and retaking or reclaiming what was formerly its property. If it never exercises this option, and until it does so, the sale having been made stays made. With the title where the parties have thus placed it, it is too clear for argument that the option to be effectively exercised must be exercised before the rights of innocent third parties intervene. No citation of authorities is called for to buttress so plain a proposition. Whatever, therefore, may be the legal effect of the paper as between the parties to it in case this reserved right of the vendor is asserted, if it never exercises the option, or if it seeks to exercise it as against an innocent purchaser for value, the conclusion reached is that the paper must be construed as effective to pass the title out of the vendor.

[2] It further follows that, in order for the plaintiff in this case to maintain its action, it must have offered evidence which would justify a finding by the jury that this option had been exercised, and its successful assertion of title would even then be defeated if the property had in the meantime been purchased for a valuable consideration by one without notice of the plaintiff's rights. It may be conceded in this case that evidence of its exercise of the option reserved was before the jury, and there remains therefore only to be determined the question of fact as to whether the defendant in this case was such an innocent purchaser for value. Had the testimony and evidence upon this question been presented by the defendant as part of his defense, it must necessarily have gone to the jury and to have been determined by them and not by the court, because its credibility would have been in issue. As the plaintiff's case was presented, however, this testimony and evidence came, not from the defense, but from the plaintiff's case in chief and was made part of the case as presented by the plaintiff to the jury. It consisted in part of the testimony of the defendant himself who was called by the plaintiff, and it was expressly stated that he was so called, not as a party under cross-examination, but as a witness for the plaintiff on direct examination. Ordinarily, courts would with reluctance rule a case upon the seemingly mere formal distinction of whether a witness testified while the plaintiff's case was being presented or the defense was being heard; but, as the case was made by the plaintiff itself to take this turn, the defendant has substantial rights in the result of which he cannot be deprived without real and practical injustice to him.

We must therefore consider the case as presented in the light of its legal effects, and one of these effects is that, the plaintiff having called a witness on examination in chief as a witness for it, and his testimony being clear and uncontradicted, its credibility need not be passed upon by a jury because vouched for by the plaintiff itself, and the testimony must be taken as true and full effect given to it.

The case therefore as presented to the jury involved the proposition

of law that, as against an innocent third party purchaser for value, title had passed out of the plaintiff, and involved the fact proven by the plaintiff itself that the defendant was such innocent purchaser for value. The instruction of the trial judge therefore to the jury to find for the defendant was correct.

The motion for a new trial is discharged, and judgment is directed to be entered on the verdict in favor of the defendant and against the plaintiff, with costs.